UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CPS TIMBERLANDS, LLC, ET AL          CIVIL ACTION NO. 15-cv-2865

VERSUS                               JUDGE FOOTE

CHESAPEAKE LOUISIANA, LP, ET AL      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

CPS Timberlands, LLC and Harts Bluff, LLC ("Plaintiffs") filed suit in state court against three defendants, who then removed the case based on assertion of diversity jurisdiction. Plaintiffs filed a Motion to Remand (Doc. 17) on the grounds that one of the defendants shares Texas citizenship with one of the plaintiffs and destroys subject-matter jurisdiction.

FCX Oil & Gas, Inc. is part of the membership chain of one of the defendant limited liability companies, so that its citizenship is relevant to diversity jurisdiction. The removing defendants allege that FCX has its principal place of business in Phoenix, Arizona, but Plaintiffs argue that it is actually in Houston, Texas. For the reasons that follow, the undersigned finds that removing defendants have met their burden on the issue and demonstrated complete diversity of citizenship. The motion to remand should be denied.

**Background Facts**

Plaintiffs allege in their petition that they own tracts of land, located in three Louisiana parishes, that are the subject of mineral leases. Defendant Chesapeake Louisiana,

LP is alleged to be the original lessee under the leases or the assignee of the original lessee's rights.  Defendant PXP Louisiana, LLC is alleged to be the assignee of 20% of Chesapeake's rights in certain of the leases.  Defendant Chesapeake Operating, LLC is alleged to have been the operator of wells on some of the leases.

Plaintiffs allege that the leases require they be paid a royalty of 25%, and the leases include addendums with specific provisions for the determination of market price and an agreement that the royalty will not be charged with certain post-production costs.  Plaintiffs allege that the defendants have violated these and other provisions of the leases.  They seek payment of what they allege is the proper amount of royalties, plus penalties and attorney fees.

Plaintiffs are limited liability companies.[1]  They allege that each of them is "wholly owned" by C. P. Scurlock Estate, LLC, which implies that the Scurlock entity is the sole member of each plaintiff.  An amended notice of removal (Doc. 14) asserts that the members of the Scurlock entity include several natural persons.  All of those persons are citizens of Louisiana, save for one who is a citizen of Texas.  Other members of Scurlock include trusts that have Louisiana citizenship and an estate that has Texas citizenship.  Accordingly, Plaintiffs are citizens of Louisiana and Texas.

---

[1] The citizenship of an LLC is determined by the citizenship of all of its members. Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077 (5th Cir. 2008). Citizenship must be traced, with specificity, "down the various organizational layers" and in accordance with the rules that apply to the various forms of entities. Mullins v. TestAmerica Inc., 564 F.3d 386, 397-98 (5th Cir. 2009); D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124 (1st Cir. 2011).

The amended notice of removal sets forth the citizenship of the two Chesapeake entities in detail, through the various layers of membership or partnership, with the result being that each of them is a citizen of Oklahoma.  The party that potentially destroys diversity of citizenship is PXP Louisiana, LLC.  Its sole member is an LLC, whose sole member is another LLC, whose sole member is Freeport-McMoRan Oil & Gas, LLC.  The sole member of Freeport-McMoRan is FCX Oil & Gas, Inc.  Defendants allege that FCX is incorporated under Delaware law and has its principal place of business in Arizona.  Plaintiffs argue in their Motion to Remand that FCX actually has its principal place of business in Houston, Texas, which would destroy complete diversity of citizenship.

**Law and Analysis**

The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The Supreme Court, in Hertz v. Friend, 130 S.Ct. 1181 (2010), addressed a split among the circuits on how to properly determine a corporation's principal place of business.  Some of the competing approaches included detailed examination of the corporation's business activities, but the Court adopted a simpler approach, stressing that "administrative simplicity is a major virtue in a jurisdictional statute."  Hertz, 130 S.Ct. at 1193.

With that in mind, the Court concluded that principal place of business "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  Id. at 1192.  "And in practice it should normally be the place where

the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."  Id.

Hertz stated that the principal place of business is a place within a state, not the state itself, and the "nerve center" will usually be the corporation's "main headquarters" that the public often considers the corporation's "main place of business."  Id.  The Court distinguished the more general business activities test that some courts had used, which involved looking to the total business activities within a state.  That more cumbersome approach was rejected.

The burden of persuasion for establishing diversity jurisdiction is on the party who asserts jurisdiction.  Hertz, 130 S.Ct. at 1194; Howery v. Allstate, 243 F.3d 912, 919 (5th Cir. 2001).  Thus, the removing defendants bear the burden in this case.  They assert that FCX has its principal place of business in Phoenix, Arizona.  Plaintiffs  challenge this assertion, which obligates the removing defendants to "support their allegations by competent proof."  Hertz, 130 S.Ct. at 1194-95.  The Hertz decision did not address the precise types of proof that would suffice, but it rejected a suggestion that simply filing a form like an SEC form 10-K that lists a corporation's principal executive offices would, without more, be sufficient proof of the corporation's nerve center.  Id. at 1195.

FCX submits the declaration of Michele Hughes, made under penalty of perjury pursuant to 28 U.S.C. § 1746.  Ms. Hughes states that she is an assistant secretary of FCX

and has been since May 2013.  As such, she is familiar with FCX's corporate structure and activities.  She states that FCX was incorporated in April 2013 to serve as a holding company in conjunction with a bond issue by a related entity (that was soon afterward merged into Freeport-McMoRan Oil & Gas, LLC).  The bond transaction required a corporation rather than an LLC to co-sign some obligations.  Hughes represents that the bond issue "was the *raison d'être* for FCX O&G, and all support and logistics relating to the bond were and are handled out of Phoenix, Arizona, since the date of FCX O&G's incorporation."  She then specifies certain bond-related obligations that were prepared in Phoenix and signed on behalf of FCX by an executive vice-president who lives and works in Phoenix.

Ms. Hughes states that FCX has engaged in no other substantive "activity" since its incorporation other than the passive ownership of Freeport-McMoRan, which is manager-managed by other persons/entities.  What limited general business activities FCX has performed have also been performed "ordinarily by personnel and officers located and working in Phoenix, Arizona."  She lists as examples applications for certificates of authority to do business in other states, each of which were prepared by Ms. Hughes in Phoenix, signed by another Phoenix assistant secretary, and filed by Hughes.  Those applications list the Phoenix address as FCX's principal office location, and the business email address listed on the California application belongs to Hughes.  FCX has no employees.  Its original documents are maintained in the Phoenix office.  Hughes asserts that FCX has its "corporate office and headquarters" in Phoenix.

Plaintiffs submit documents that they believe indicate FCX actually has its principal place of business in Houston, Texas.  Plaintiffs point to the designation of "principal executive offices" in Houston in a form S-1 filed with the SEC in August 2015.  FCX states that the document was filed in conjunction with a potential initial public offering that would have involved the creation of a new entity (Freeport-McMoRan Oil & Gas, Inc.) that ultimately did not take place.  Part of that form stated: "Our principal executive offices are located at 700 Milam, Suite 3100, Houston, Texas 77002 ... ."  The document states that the term "our" refers to FCX "and its subsidiaries before the completion of our corporate reorganization prior to the closing of this offering," as well as the proposed new entity and its subsidiaries as of the completion of reorganization.  Hertz stated that such an administrative filing, alone, is not sufficient to determine the issue of a corporation's nerve center.  The definition used in the document, plus the fact that the transaction was not completed, also water down the impact of the document's designation of principal executive offices.

Plaintiffs next point to a printout from the Louisiana Secretary of State regarding FCX's registration in Louisiana.  Plaintiffs note that 22 of the 33 officers listed for the company have the same Houston mailing address noted above, and only six officers list the Phoenix office address.  Among the officers with a Houston address are FCX's chairman of the board and CEO, three of four executive vice-presidents, and the only two officers who are also designated as directors.  On the other hand, the Louisiana filing designates FCX's "principal business office" as its address in Phoenix, and those officers listed with Phoenix

addresses include vice-presidents, secretaries, and a treasurer.  Three other officers have an address in New Orleans.

Plaintiffs attach an SEC form 10-K filed by Freeport-McMoRan, Inc. (not FCX) for 2015.  Plaintiffs state that the document's importance is that it shows FCX's ultimate parent company list its "oil and gas office" as being in Houston.  Finally, Plaintiffs point to a portion of the website for Freeport-McMoRan, Inc. that similarly lists its Houston oil and gas office as the 700 Milam address.  Neither the website nor the 10-K directly addresses FCX, and the documents have no particular factual information about how FCX's activities are organized and executed.

The evidence presented shows that FCX has listed the Phoenix address on a number of administrative filings as the designation for its principal business office.  The corporation is a holding company, and there is no evidence that it engages in any traditional business activities.  It merely owns a membership interest in an LLC that is managed by other persons.  What little business it has conducted, related to the bond matter, was carried out by officers in Phoenix, where corporate records are kept.  Plaintiffs show that a significant number of board members and officers have offices in Houston, but they present no evidence that those officers have done anything in Houston to "direct, control, and coordinate the corporation's activities."  Hertz, 130 S.Ct. at 1192.

Hertz admitted that  there will be hard cases even under the straightforward nerve center test it adopted.  Making the determination with respect to a passive holding company is an example, as demonstrated by Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d

Cir. 2013).  The panel majority held that the holding company's principal place of business was Delaware, where board meetings were conducted.  It noted that Hertz discounted the impact of board meetings, but said that was in the context of a case that involved a sprawling operating company with extensive activities in multiple states.  For a holding company, the Third Circuit opined that short quarterly board meetings may well be all that is required to direct and control the company's limited work.  One judge concurred and disagreed with that conclusion.  He believed that the holding company's principal place of business was in the United Kingdom, where one of the board members was located, employees addressed tax issues, and from where the company received its overall strategic guidance.  The concurring judge stressed that Hertz said to look to the place "where a corporation's *officers* direct, control, and coordinate the corporation's activities."  (Emphasis added).

The defendants removed the case based on a specific allegation that FCX has its principal place of business in Phoenix.  Plaintiffs challenged that assertion with documents that show the company also has connections to Houston, and a significant number of its directors and officers are located in Houston.  FCX responded with a sworn statement that Phoenix is its principal business office and that the few corporate activities performed by FCX have been carried out by officers and employees in the Phoenix office.  The evidence best supports a finding that FCX has what would be considered its "main headquarters"or "main place of business" in Phoenix, so that is FCX's principal place of business for jurisdictional purposes.

The undersigned finds that the removing defendants have supported their allegations with competent proof sufficient to defeat the motion to remand.  With that said, the undersigned can envision that additional facts relevant to this issue might be developed as the case progresses.  The court must be ever mindful of its subject-matter jurisdiction.  The recommended denial is, therefore, without prejudice to reconsideration of this issue upon a proper showing of significant evidence that Houston rather than Phoenix is FCX's principal place of business.

Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' **Motion to Remand (Doc. 17)** be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of May, 2016.

 

Mark L. Hornsby
U.S. Magistrate Judge